UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANTOWINE BUTTS,           )
                          )
              Plaintiff,           )
                          )
  -against-              )
                          )  **01 CV 2945(NG)(RML)**
                          )
THE CITY OF NEW YORK; et al.,   )
                          )
             Defendants.         )
------------------------------------------------------------X


### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER COMPELLING PRODUCTION OF NEW YORK CITY POLICE DEPARTMENT RECORDS


MICHAEL L. SPIEGEL  [MS-0856]
111 Broadway, Suite 1305
New York, New York  10006
(212) 587-8558

Bruce A. Barket, Esq.
666 Old Country Rd., Suite 412
Garden City, NY 11530
(516)745-0101

Attorneys for Plaintiff
ANTOWINE BUTTS

Dated: New York, New York

December 19, 2005

**STATEMENT OF FACTS**

Plaintiff Antowine Butts respectfully submits this Memorandum of Law in Support of his Motion for an Order Compelling Production of New York City Police Department records concerning the investigation into the involvement of Christopher Robinson and Jakim Pugh in the incident for which plaintiff was arrested and prosecuted.

On December 30, 1997, two men entered a grocery store at the corner of Strauss Street and Riverdale Avenue in Brooklyn, robbed the store and killed two employees. In the early morning hours of January 1, 1998, detectives had their first break in the case. At that time, detective Robert Schulman, the lead detective, interviewed Martin Mitchell. Mitchell had been arrested at an apartment which had been reported as the source of gunfire. During the course of Mitchell's arrest, he indicated that he wished to speak with detectives concerning an unrelated matter.

When he was interviewed, Mitchell claimed to have information about the grocery store murders which had taken place two days earlier. He told Schulman that he had been present for a planning meeting concerning the robbery of the grocery store which was attended by Christopher Robinson and Jakim Pugh.[1] Although Mitchell only knew them by nicknames when he was initially debriefed, their true names were known within 24 hours. Mitchell not only described them as being present for a planning meeting before the murders, he said that he observed them at the scene of the murders. Mitchell claimed that a third participant was known by the nickname "Black," according to Det. Schulman.

From the time Pugh and Robinson were identified on January 2, 1998, until the arrest of

---

[1] Ultimately, the grand jury did not indict Robinson, and Pugh was never arrested or charged for the crime.

1

plaintiff on January 8, 1998, the investigation focused on identifying "Black." According to Schulman, detectives conducted computerized research in an attempt to identify associates of Pugh and Robinson, to see if any of them could be "Black." Detectives debriefed arrestees, interviewed complainants who came into the precinct on other cases, and asked anti-crime and narcotics units to gather information from informants and people "on the street."

Ultimately, according to Det. Schulman, a witness identified plaintiff as someone who was associated with Pugh and Robinson, and a photo of plaintiff was shown to a witness from the scene who allegedly identified him as being present at the time of the murders. Thereafter, lineups were conducted.

Pugh, Robinson, and plaintiff were all investigated as part of a single investigation into the robbery/murders on December 30, 1997. Plaintiff cannot know with particularity what information is contained in the part of the investigation files which defendants have deemed "Robinson records" or "Pugh records." Nor can plaintiff know what standard has been applied by defendants' counsel to distinguish between such records, and "Butts records." Assistant Corporation Counsel Montoya originally withheld documents she claimed were part of those sealed records; Ms. Frommer later produced some of them. It is clear that no bright line exists between "Robinson records," "Pugh records," and "Butts records" in a case in which the investigation theory was that all three were involved in planning and carrying out the crime together. As described by Det. Schulman and other detectives, it was Pugh and Robinson who were identified first, however, and a major part of the investigation was based upon their certainty as to those identities, and their attempts to identify an associate of theirs who went by the nickname "Black."

2

## ARGUMENT

The request for NYPD records concerning the investigation into Pugh and Robinson's involvement in the murders is "reasonably calculated to lead to the discovery of admissible evidence." F.R.Civ.P. 26(b)(1). Information from the investigations into Pugh and Robinson will undoubtedly play some part in defendants' defense that they had probable cause to arrest and prosecute plaintiff. Likewise, it is reasonably likely that there is information which will erode a claim of probable cause, since plaintiff was not an associate of either Pugh or Robinson. Such evidence may also support Martin Mitchell's testimony that he was coerced into identifying plaintiff in a lineup.

Defendants herein have refused to comply with the discovery request by simply asserting a generalized objection based on state law. It is black letter law that a federal court may order production of materials sealed under state law, and specifically under New York State Criminal Procedure Law §§160.50 and 160.55. Furthermore, defendants cannot show that any potential harm which might theoretically arise from disclosure of the records cannot be ameliorated by an appropriate protective order assuring that the documents be kept confidential and limiting their use.

It is well established that federal courts follow federal law, not state law, to resolve discovery and privilege disputes in federal civil rights matters. *See, e.g., Conde*, 121 F.R.D. at 187 ("New York state law does not govern discoverability and confidentiality in federal civil rights actions."); *Fountain v. City of New York*, 2004 U.S. Dist. LEXIS 7539 (same); *Cruz v. Kennedy*, 1997 U.S. Dist. LEXIS 23012 (S.D.N.Y. 1997)(same); *Skibo v. City of New York*, 109 F.R.D. 58, 61 (E.D.N.Y. 1985) ("The existence of a privilege in cases raising a federal question is governed by federal common law."). Judge Weinstein cogently summarized the rationale for this proposition in his

landmark opinion in *King v. Conde* as follows:

> Simple direct application of the state rule would be undesirable and improper. It would often frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983.

121 F.R.D. at 187.

As an initial matter, New York Criminal Procedure Law sections 160.50 or 160.55 does not bar this Court from ordering production of the NYPD files. This precise issue was reached by the court in *Cruz v. Kennedy*, where the court concluded that confidentiality rules cannot bar disclosure of District Attorney's files in a federal civil rights action. *Kennedy v. Cruz*, 1997 U.S. Dist. LEXIS 23012 (S.D.N.Y. 1997).

In *Cruz*, the plaintiff, who had brought an action under § 1983 alleging assault and excessive force by a police officer, subpoenaed the District Attorney's file in the criminal case against the officer. The District Attorney asserted that it was "barred by state law from reviewing, let alone disclosing, the contents of the file" as it had been sealed pursuant to New York Criminal Procedure Law § 160.50 upon the officer's acquittal. *Cruz*, 1997 U.S. Dist. LEXIS 23012 at * 4. The court, relying on the precedent set by *King v. Conde* and its progeny, held that "it is in the power of this Court to issue an order compelling production." *Id.* at *6. Noting that the District Attorney had asserted only a general need for confidentiality of the file, thus "failing to meet its burden of explaining the reasons for nondisclosure 'with particularity,'" the court further concluded that "New York Criminal Procedure Law § 160.50 cannot bar disclosure of the [District Attorney's] file." *Id.* at *7(quoting *King,* 121 F.R.D. at 189).

Based on *King*, *Cruz*, and the general principles of federal discovery law, the defendants

4

should be ordered to produce forthwith the NYPD documents and materials sought in plaintiff's discovery request.

Respectfully Submitted,

/s/
MICHAEL L. SPIEGEL [MS-0856]
111 Broadway, Suite 1305
New York, New York 10006
(212) 587-8558

Attorney for Plaintiff
Antowine Butts

Dated: New York, New York
December 19, 2005

5